E-FILED
Monday, 03 August, 2026 03:03:31 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ANTHONY MRDJENOVICH, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 26-3147 |
| | ) | |
| GWEN TAYLOR, *et al.*, | ) | |
|     Defendants. | ) | |

### <u>MERIT REVIEW ORDER</u>

Plaintiff, proceeding *pro se* and currently incarcerated at Western Illinois Correctional Center ("Western"), filed an Amended Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. (Doc. 21). The Court must "screen" Plaintiff's Amended Complaint, and through such process, identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing the Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient, however. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### ALLEGATIONS

Plaintiff files suit against Dr. Victor Escobar, Correctional Officer Wilson, and Nurse Taylor. On February 2, 2026, Correctional Officers Wilson and Spears transported Plaintiff to an oral surgeon, Defendant Dr. Escobar, who surgically removed three of Plaintiff's wisdom teeth at his office in Champaign, Illinois. Defendant Wilson remained present during the procedure. Plaintiff alleges Defendant Dr. Escobar used inappropriate force when extracting his wisdom teeth,

1

which allegedly caused temporomandibular joint dysfunction and a fractured, broken, or dislocated jaw. Plaintiff alleges Defendant Dr. Escobar did not give him or the escorting officers any oral or written post-operative instructions.

Following the surgery, Plaintiff was transported back to Western. During transport, Plaintiff alleges he was in excruciating pain, bleeding, and swallowing blood. Plaintiff informed Defendant Wilson that he needed his gauze changed. Defendant Wilson responded that he had some extra gauze but would not change the gauze for Plaintiff. When the van stopped at a gas station, Defendant Wilson gave Plaintiff three or four pieces of gauze but did not give him any sanitation supplies. Plaintiff alleges he was forced to change his own gauze while wearing black box handcuffs in the back of a dirty van and to ride the rest of the way to Western with bloody gauze on his lap.

When Plaintiff arrived at Western on February 2, 2026, he was very weak, drowsy, and spitting blood. Plaintiff told Defendant Wilson he needed something for the pain in his mouth. Plaintiff was brought to the Healthcare Unit ("HCU") where he saw Defendant Nurse Gwen Taylor. Plaintiff alleges he informed Defendant Taylor that he was bleeding and in pain, but Defendant Taylor did not provide any medical treatment, medication, local syringe, gauze, or ice, did not instruct Plaintiff how to keep his mouth and wounds clean, did not ask dental staff to check Plaintiff's mouth to ensure his stitches and wounds were alright, and did not provide the medication Defendant Dr. Escobar had prescribed. Defendant Taylor allegedly told Plaintiff that he would see a nurse practitioner in a few days, but this never occurred.

Plaintiff put in sick call request slips, but he was not seen by dental staff until five days later. Plaintiff alleges the delay in treatment and lack of medication caused severe complications

to his wounds and jaw. Plaintiff developed painful dry sockets, his stitches ripped, his mouth and jaw were swollen, he could barely eat or speak, and he developed permanent complications.

On an unspecified date, Plaintiff alleges Defendant Dr. Escobar falsely documented in his medical report that there were no clicking or grinding noises in Plaintiff's jaw joints and that Plaintiff's jaw was not misaligned. Plaintiff claims this caused a delay in his treatment and worsened the complications.

On March 10, 2026, Plaintiff alleges Defendant Dr. Escobar failed to obtain Plaintiff's written or oral consent to administer a left steroid injection without a numbing agent, which Defendant Dr. Escobar allegedly knew would cause severe pain and possible injury. Plaintiff alleges he now has a bone protrusion on the left side of his jaw. Plaintiff claims Defendant Dr. Escobar deliberately attempted to cover up injuring him by indicating in his report that he suspected Plaintiff had been recently hit in the face.

Plaintiff alleges dental staff at Western told him that Defendant Dr. Escobar injured several other inmates from Western and Jacksonville Correctional Center ("Jacksonville") in the past.

Plaintiff states he continues to experience constant pain in his mouth and jaw area, has difficulty chewing food, and experiences "lock jaw," sleeplessness, loss of enjoyment of everyday activities, and depression (Doc. 21 at p. 4). Plaintiff states he now wears a mouth guard for approximately eighteen hours a day, takes pain medication and muscle relaxers, and was issued slow eating and soft diet permits.

## ANALYSIS

### I.  Deliberate Indifference Claim

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim

of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

### A. Correctional Officer Wilson

On the way back to Western after surgery on February 2, 2026, Plaintiff alleges he told Defendant Wilson that he was bleeding and needed his gauze changed. Defendant Wilson stopped at a gas station and gave Plaintiff three or four pieces of gauze. Plaintiff alleges Defendant Wilson refused to change the gauze and did not give him any sanitation supplies. Plaintiff alleges he changed his own gauze while wearing black box handcuffs and was forced to ride the rest of the way back to Western with bloody gauze on his lap. Plaintiff alleges he told Defendant Wilson that he needed pain medication. Upon his arrival at Western, Plaintiff was taken to the HCU.

The Court finds that Plaintiff's allegations are insufficient to proceed on a deliberate indifference claim against Defendant Wilson. As Plaintiff states, Defendant Wilson gave him

gauze to address his bleeding and ensured he was seen in the HCU when he returned to Western. Defendant Wilson, who was not employed as a medical professional, was not deliberately indifferent by refusing to change Plaintiff's bloody gauze in the transport van. Defendant Wilson is DISMISSED WITHOUT PREJUDICE for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

### B.  Dr. Victor Escobar

Plaintiff alleges Defendant Dr. Escobar was deliberately indifferent to his serious medical needs in violation of Eighth Amendment by using inappropriate force when extracting his wisdom teeth on February 2, 2026, and failing to provide post-operative instructions. When attempting to address the complications, Plaintiff alleges Defendant falsely documented in his medical report that there were no clicking or grinding noises in Plaintiff's jaw joints and that Plaintiff's jaw was not misaligned. Plaintiff claims this caused a delay in his treatment and worsened the complications.

On March 10, 2026, Plaintiff alleges Defendant Dr. Escobar failed to obtain his consent to administer a left steroid injection without a numbing agent, which Defendant allegedly knew would cause severe pain and possible injury. Plaintiff alleges he now has a bone protrusion on the left side of his jaw. Plaintiff claims Defendant deliberately attempted to cover up injuring him by indicating in his report that he suspected Plaintiff had been recently hit in the face.

Plaintiff alleges he continues to experience constant pain in his mouth and jaw area, has difficulty chewing food, and experiences "lock jaw," sleeplessness, loss of enjoyment of everyday activities, and depression (Doc. 21 at p. 4). Plaintiff states he now wears a mouth guard for approximately eighteen hours a day, takes pain medication and muscle relaxers, and was issued

slow eating and soft diet permits. Plaintiff alleges dental staff at Western told him that Defendant Dr. Escobar injured several other inmates from Western and Jacksonville in the past.

To state a claim under § 1983, a plaintiff must show that he was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). Generally, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). Medical providers can fall under the purview of § 1983 as well. *Id.* at 52. However, to show a private medical provider is a state actor pursuant to § 1983, "the dispositive issue concerns the relationship among the State, the physician, and the prisoner." *Id.* at 56. Because the State bears an affirmative obligation to provide medical care to prisoners, when the State delegates that function to a medical provider and that provider "voluntarily assumes that obligation by contract," that physician becomes a person acting under color of law. *Id.* However, a medical provider does not become a state actor merely by treating an inmate. Individuals that provide medical services "as part of a municipal service available to all persons needing emergency medical care in the area," and without a contract with the prison system, are not acting under color of state law. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 830 (7th Cir. 2009).

Although it is unclear if Defendant Dr. Escobar was acting under color of state law when he provided medical treatment to Plaintiff, the Court finds that Plaintiff's allegations are sufficient to proceed on an Eighth Amendment deliberate indifference claim against Dr. Escobar, at least at this stage of the proceedings. *See Allen v. Jeffreys*, No. 23-CV-3775-DWD, 2024 WL 308522, at *9 (S.D. Ill. Jan. 26, 2024) (allowing *pro se* plaintiff to proceed under § 1983 at merit review). "[T]he viability of this claim will turn on inquiries that the Court cannot complete at the stage of

6

initial review." *Id.* (citing *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 797-98 (7th Cir. 2014) ("whether a medical provider is a state actor is a functional inquiry, focusing on the relationship between the state, the medical provider, and the prisoner.")).

The Seventh Circuit has found that a plaintiff may be entitled to limited discovery to determine whether a medical provider is a state actor, as this is not information a plaintiff may always be charged with knowing. *See Rodriguez*, 577 F.3d at 830. Pursuant to the guidance from *Rodriguez*, the Court finds that rather than allow full discovery to proceed in this matter, it may be prudent to allow a limited period of discovery on the dispositive issue of whether Defendant Dr. Escobar was acting under the color of law. After completing limited discovery, Defendant Dr. Escobar will be granted leave to file a motion for summary judgment on this issue without prejudice to filing an additional motion for summary judgment if that one is denied.

### C. Nurse Gwen Taylor

On February 2, 2026, Plaintiff alleges he informed Defendant Taylor that he was bleeding and in pain after his surgery, but Defendant Taylor did not provide any medical treatment, medication, local syringe, gauze, or ice, did not instruct Plaintiff how to keep his mouth and wounds clean, did not ask dental staff to check Plaintiff's mouth to ensure his stitches and wounds were alright, and did not provide the medication Defendant Dr. Escobar had prescribed. Defendant Taylor allegedly told Plaintiff that he would see a nurse practitioner in a few days, but this never occurred. Plaintiff put in sick call request slips, but he was not seen by dental staff until five days later. Plaintiff allegedly developed painful dry sockets, his stitches ripped, his mouth and jaw were swollen, he could barely eat or speak, and he developed permanent complications. Based on Plaintiff's allegations the Court finds that Plaintiff has stated an Eighth Amendment deliberate indifference claim against Defendant Taylor.

## II.    Medical Negligence Claim

Plaintiff alleges that due to Defendant Nurse Taylor's "negligence and deliberate indifference [he] now has permanent damage to his mouth, jaw, jaw joints and severe constant pain that affects everyday life and activities." (Doc. 21 at p. 2).

Plaintiff also files suit against Defendant Dr. Escobar for "medical negligence." *Id.* Plaintiff alleges Defendant Dr. Escobar knew that the inappropriate force he used against Plaintiff when he extracted his three wisdom teeth would cause injuries, including temporomandibular joint dysfunction and a fractured, broken, or dislocated jaw. Plaintiff also alleges Defendant Dr. Escobar knew that not giving Plaintiff or the transport officers post-operative instructions or a local syringe would harm Plaintiff's ability to effectively treat his wounds after surgery. Additionally, Plaintiff claims that Defendant Dr. Escobar falsified Plaintiff's medical reports by documenting that there were no clicking or grinding noises in Plaintiff's jaw joints and no misalignment of the jaw, bite, or teeth, failed to obtain his consent before administering a left steroid injection without a numbing agent, and falsified his report by indicating Plaintiff had been recently hit in the face.

Construing Plaintiff's allegations liberally, the Court will also allow Plaintiff to proceed on a medical negligence claim under Illinois law against Defendants Taylor and Dr. Escobar. The allegations derive from the same facts as the federal constitutional claim, so this Court will exercise supplemental jurisdiction over the medical negligence claim. *See Krementz v. Siddiqui*, No. 20-CV-01358-SPM, 2021 WL 5866917, at *3 (S.D. Ill. Dec. 10, 2021) (citing 28 U.S.C. § 1367(a)). Plaintiff is advised that he is required to comply with the Illinois Healing Arts Malpractice statute by the summary judgment stage. *See* 735 ILCS 5/2-622; *Young v. United States*, 942 F.3d 349 (7th Cir. 2019) (allowing *pro se* Plaintiff until summary judgment stage to comply with affidavit requirement). Plaintiff must file a "certificate of merit," a written report by a health professional

8

attesting that there is a "reasonable and meritorious cause for the filing." 5/2-622(a); *see also Hahn v. Walsh*, 762 F.3d 617, 628-33 (7th Cir. 2014) (Rule 2-622 applies to state law claim filed in federal court). The failure to do so will result in the dismissal of Plaintiff's medical negligence claim.

**IT IS THEREFORE ORDERED:**

1)      According to the Court's Merit Review of Plaintiff's Amended Complaint under 28 U.S.C. § 1915A, this case shall proceed on an Eighth Amendment deliberate indifference claim and a medical negligence claim under Illinois law against Defendants Dr. Victor Escobar and Gwen Taylor. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2)      The Clerk is directed to ADD Dr. Victor Escobar as a Defendant.

3)      Defendant Wilson is DISMISSED WITHOUT PREJUDICE for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

4)      Plaintiff's Motion for Status of Merit Review [27] is MOOT.

5)      Defendant Gwen Taylor already filed an executed Waiver of Service of Summons on July 9, 2026. (Doc. 22). No waiver needs to be issued for Defendant Taylor. Defendant Taylor is DIRECTED to file an answer to Plaintiff's Amended Complaint by September 10, 2026.

6)      Pursuant to this District's internal procedures, the Clerk is DIRECTED to send Defendant Dr. Escobar the following documents: 1) a Notice of Lawsuit and Request for Waiver of Summons; 2) a Waiver of Service of Summons; 3) a copy of the Amended Complaint; and 4) a copy of this Merit Review Order.

7)      The Court will attempt service on Defendant Dr. Escobar by mailing a Waiver of Service of Summons. If Defendant fails to sign and return the waiver to the Clerk within 30 days

9

after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendant and will require Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

8)      Defendant Dr. Escobar shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendant's positions. The Court does not rule on the merits of those positions unless and until Defendant files a motion. Therefore, no response to the answer is necessary or will be considered. If Defendant has not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the Court will enter an order setting discovery and dispositive motion deadlines.

9)      If Defendant Dr. Escobar no longer works at the address Plaintiff provided, the entity for whom Defendant worked while at that address shall submit to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of Defendant's forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

10)      This District uses electronic filing, which means that after Defendant Dr. Escobar's counsel has filed an appearance, Defendant's counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and

responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel.

11) Defendants' counsel are hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

12) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

13) Plaintiff shall be provided a copy of all pertinent medical records upon request.

14) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel, if Plaintiff has not already done so.

15) The Clerk is directed to set an internal deadline 60 days from the entry of this Order for the Court to check on the status of service regarding Defendant Dr. Escobar.

ENTERED:  8/3/2026

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge